UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Gerard M., | Case No. 21-cv-00019 (HB) |
| Plaintiff, | |
| v. | **ORDER** |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

HILDY BOWBEER, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Gerard M. seeks judicial review of a final decision by the Commissioner of Social Security denying his application for supplemental security income. This matter is before the Court on the parties' cross-motions for summary judgment [ECF Nos. 18, 21]. The parties consented to the undersigned judge's jurisdiction. For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's motion.

I.   BACKGROUND

   A.   Procedural Background

Plaintiff filed an application for Disability Insurance Benefits (DIB) on June 19, 2018, claiming disability beginning on November 30, 2017. (R. 23, 216[1].) Plaintiff's application was denied at the initial and reconsideration levels. (R. 23.) Plaintiff and a

---

[1] The Court cites the Social Security Administrative Record as "R." and uses the pagination that appears in bold in the lower right corner of each page.

vocational expert testified before an Administrative Law Judge (ALJ) on June 3, 2020. (R. 53–101.)  On July 2, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (R. 20–32.)  The Appeals Council denied Plaintiff's request for review without substantive analysis on November 18, 2020.  (R. 1-3.)

  **B.**  **Relevant Records**

The Court will recount the record evidence only to the extent it is helpful for context or necessary for resolution of the specific issues presented in the parties' motions.  Plaintiff challenges the ALJ's classification of his past relevant work for a business called Treasure Hunters Roadshow, not the evidentiary sufficiency of the ALJ's factual findings regarding his impairments.  Therefore, the Court recounts only the evidence relevant to that issue.

    **1.**  **Work History**

Plaintiff worked for Treasure Hunters Roadshow from 2009 to 2011, a business that bought gold and silver.  (R. 279.)  According to his work history report, he was required to use technical knowledge and write and file reports, walk, stand, sit, stoop, reach, and handle large and small objects.  (R. 281.)  The heaviest weight he lifted was 100 pounds or more, and he frequently lifted less than 10 pounds.  (R. 281.)  He worked from 8 a.m. until the last customer left, sometimes 10 or 11 p.m., and described his job as "People would bring whatever?  Put it on the table and we go through it and make an offer."  (R. 281.)

    **2.**  **Hearing Testimony**

During the hearing, the ALJ questioned Plaintiff about his position:

A: I was a buyer, and we were going to -- I worked mainly with the upper half of the United States, and we would travel from town to town or state to state, and we would set up for a week and we would buy gold, silver, high owned Tiffany's, and whatever, you know, they had that the manager would want.

Q: Okay. And when you would go to these towns, would you set up there? How would you -- where would you sell out of or buy out of?

A: We would set up, and we would talk down and then load it all into the trailer and then drive all night long to the next setup. . . . And then the same process over and over and router display essentially would pick up and they were packed into boxes I would say between 20 to maybe was it 55 pounds.

Q: Okay. And what kind of items would you be in a – what kind of items would be in a box that were like 55 pounds? What are some examples of those?

A: Cast iron toys. They would be pretty much together and then you got -- was it -- the antiquities and then we would have one box full of coins, foreign coins, and that weighed probably only 30 to 35 pounds, including the box but it was -- a lot of the stuff were finds, 15 to 20 pounds, tables, chairs . . . and then all our luggage. . . . Sometimes people would be busy setting up, you know, we would help each other with our luggage and . . . I couldn't tell what the other guys had in there because some of them were over 100 pounds.

. . .

Q: And so were you buying and selling goods at these?

A: No selling at all. It was all buying.

Q: Okay. And then what did you do when you got too much stuff to buy? Did you have to send it somewhere, or what did you do with it?

A: Sometimes daily to sometimes a couple times a week we would load up and sometimes the gold or the silver that we would buy would be several, you know, 50, 75 pounds, and we would load it and with it into the back of our truck, take it to the nearest FedEx, and ship it.

> Q: Okay. And when you arrived at the shows, were you involved in the buying and assessments of the goods?
>
> A: Yes. . . . We had five buyers and the management. The one person wrote the checks to the people that -- for the things that we bought.
>
> . . .
>
> Q: Okay. And did you -- were involved in the money part of it, the person who wrote up the checks?
>
> A: No, that was a totally different department.
>
> Q: And how did you figure out how much something was worth?
>
> A: Basically with it -- at the -- in the beginning, I was – I didn't know, but what they told me to do was go online at eBay or wherever and see if I could find -- it has several sites that we can go to find something, or we could call them at headquarters, tell them what we had, sometimes we'd take pictures and send it to them, and they would tell us pretty much what it was worth and would -- after a while, you get, you know, you pick it up and you can, you know, you know what you're looking at.

(R. 64–67.)

Plaintiff's attorney further questioned him:

> Q: I'm going to take you to your -- the Treasure Hunting bartering job. Were you -- how long did that take you to learn to do the job?
>
> A: It took me a good six months really, you know, and --
>
> Q: Did you take in any inventory?
>
> A: No, it's not an inventory. We bought.
>
> . . .

4

> Q: Okay. Were you -- did you have to have a knowledge of the market price, or were you simply googling or calling the price manager?
>
> A: Googling it or basically was it -- after a period of time, I learned that it was easier just to turn around and say offer everything on the table, one flat low rate, and you offer for what you -- the one item that you wanted . . . and a lot of times that's what they went for.
>
> Q: Did the appraisal piece of this job take long to learn?
>
> . . .
>
> A: I can say that I learned it real quick, but the manager will probably tell you no . . . because I -- it just dragged out a long time.

(R. 86–87.) Based on the testimony and records, the vocational expert testified that the position was a Buyer. (R. 88.)

The ALJ asked the vocational expert whether a hypothetical individual could do any of Plaintiff's past relevant work accounting for Plaintiff's education, age, and the following restrictions:

> The individual is able to do light work as defined in the regulations, except the individual is able to lift and/or carry 20 pounds occasionally and ten pounds frequently, stand or walk for six hours of an eight-hour workday, sit for six hours of an eight-hour workday. The individual has no limitations on push and pull, except for the limitations in lifting and carrying. The individual can occasionally climb ramps and stairs, occasionally climb ladders, ropes, scaffolds. The individual can occasionally balance, stoop, kneel, crouch, crawl. The individual should not do any overhead reaching. With these limitations, can the hypothetical individual perform any past work?

(R. 89.) The vocational expert testified that Plaintiff could not do the Buyer job as he performed it because it required heavy lifting, 65 or 70 pounds, but he could do it as

5

described in the Dictionary of Occupational Titles (DOT). (R. 90.) Plaintiff's attorney proposed another job, Merchandise Displayer (DOT 298.091-010), as a more accurate match for Plaintiff's position. (R. 92.) The vocational expert confirmed that Plaintiff was doing physical work, but Buyer was a more appropriate classification because Plaintiff described himself as a "Buyer" and his description of the job duties fit the DOT's description of Buyer. (R. 93.)

> The ALJ sought further clarification from Plaintiff regarding his job duties:
>
> Q: How many days a month do you think you were buying goods?
>
> A: Fifteen.
>
> Q: Okay. How many days a month were you driving?
>
> A: Let's see. Four or five, maybe six.
>
> Q: Okay. How many days were you setting up for the shows, so setting up the tables and your merchandise and all of that? How many days would you do that a month?
>
> A: About six and six taking down but you have to understand here too I didn't do it all by myself. There were several other people working with me, and most of them were all younger.
>
> Q: Okay. So 12 days a month you spent setting up and taking down?
>
> A: Yes.
>
> Q: Okay. And then 15 days a month you spent buying the merchandise?
>
> A: Yes.
>
> Q: Okay. And then you said six days a month you were driving. That's over 30 days.

> A: A lot of times when we got to a certain site, depending on how far we were driving, we'd be setting up as soon as we got there. Sometimes we'd be opened up that day. . . . So I mean it did vary from town to town on what time they set it, how far the town was from one place to the next . . .
>
> Q: Okay. Well, driving or riding in the car. So the driving and the riding the car days overlapped with the setup days?
>
> A Yes.

(R. 95–97.) The ALJ then questioned the vocational expert about the job classification:

> Q: [W]hy doesn't the DOT code suggested by [Plaintiff's attorney] apply to the . . . 12 days a month when he was driving, riding in the car, or setting up?
>
> A Well, I think it sounds like his primary duty -- while he had to travel and do things like that, his primary duty was buying goods and services for whatever company he was working for. There's displayer merchandise. Let me just read the description to you out of the DOT. Displays merchandise such as clothes, accessories, furniture in window showcases or on sales floor or retail store to attract attention of prospective customers. He wasn't doing that. They were setting up a display so they could buy goods.

(R. 97–98.) Plaintiff's attorney objected to the job classification at the close of the hearing. (R. 101.)

### 3. ALJ's Determination

The ALJ follows a five-step sequential evaluation process for determining disability for DIB. 20 C.F.R. § 404.1520(a)(4). The five steps are: (1) whether the claimant's work activity, if any, is substantial gainful activity; (2) whether the claimant has any severe, medically determinable impairments meeting the duration requirement; (3) whether one or more of those impairments meets or medically equals the criteria of a

7

listed impairment; (4) whether the claimant's residual functional capacity (RFC)[2] allows him to do past relevant work; and (5) whether the claimant's RFC and age, education, and work experience allow him to adjust to other available work. *Id.* (a)(4)(i)–(v). If the ALJ determines at any step that the claimant is disabled or not disabled, the ALJ halts the evaluation. *Id.* (a)(4).

The ALJ found at step one of the evaluation process that Plaintiff had not engaged in substantial gainful activity since his alleged disability on-set date. (R. 26.) At step two the ALJ found that Plaintiff had the following severe impairments: rotator-cuff tendinitis of the right shoulder, status-post 2016 arthroscopic repair; degenerative joint disease of the acromioclavicular joint of the left shoulder; degenerative disc disease of the cervical spine; degenerative changes to the lumbar spine; and plantar fasciitis. (R. 26.) At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 26.) At the start of step four, the ALJ found that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> He could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk six hours in an eight-hour workday, and could sit six hours in an eight-hour workday. He had an unlimited ability to push and pull except for the limitations in lifting and carrying. He could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and he could occasionally balance, stoop, kneel, crouch, and crawl. He could not perform overhead reaching. Beginning

---

[2] RFC measures the most a claimant can still do in a work setting, despite limitations caused by his impairments. 20 C.F.R. § 404.1545(a)(1).

> May 1, 2019, the claimant has the residual functional capacity to perform light work with the aforementioned exertional, postural, and reaching limitations, and with the following additional limitations: he can occasionally reach at chest level, and can frequently reach at waist or desk level.

(R. 27.)

At step four, the ALJ found Plaintiff was capable of performing past relevant work as a buyer as it is generally performed based on the description in the DOT, but not as Plaintiff specifically performed it due to the lifting and loading duties to which he testified. (R. 31.) The ALJ described Plaintiff's past work as traveling between towns and states, apprising the value of items brought to the booth, buying them, packing them into boxes weighing 20–75 pounds, and shipping them. (R. 31.) He did not sell items. (R. 31.) The ALJ noted that Plaintiff spent about 15 days a month buying goods, four to five travelling, and about 12 loading and unloading purchased goods and booth components for the purpose of buying goods, with some tasks overlapping the same day. (R. 31.) The ALJ also credited the vocational expert's opinion that Buyer was the appropriate DOT classification because it matched Plaintiff's job title for his work and the primary job duties he described. (R. 31.) She further credited the vocational expert's description of "'displayer' as someone who sets up merchandise displays in windows or on sales floors in order to sell items to prospective customers, and this job description did not fit the claimant's past work." (R. 31–32.) At that point, the ALJ found Plaintiff not disabled and halted the evaluation. (R. 32.)

9

## II.     STANDARD OF REVIEW

The claimant is disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The claimant bears the burden in the first four steps of the evaluation to prove he is disabled and cannot perform past relevant work. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). At step five, the burden shifts to the Commissioner to prove "first that the claimant retains the residual functional capacity to do other kinds of work, and second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

Judicial review of the Commissioner's denial of benefits is limited to determining whether the ALJ made a legal error and whether substantial evidence in the record as a whole supports the decision. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). "Substantial evidence in the record as a whole requires a more searching review than the substantial evidence standard." *Grindley*, 9 F.4th at 627; *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). A court must consider evidence that fairly detracts from the ALJ's decision. *Grindley*, 9 F.4th at 627. But a court may not "reweigh" the evidence or reverse the ALJ's decision "merely because substantial evidence would have supported an opposite decision." *Id.* "If, after

reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* A court will disturb the ALJ's decision only if it finds from the evidence as a whole that the decision "falls outside the available zone of choice." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021).

A court must also ensure the ALJ adequately explained his findings and conclusions. The ALJ's determination must indicate which evidence the ALJ relied on and which he rejected, and his reasons for doing so, but he need not cite specific facts supporting specific findings and conclusions. *See Vance v. Berryhill*, 860 F.3d 1114, 1117–18 (8th Cir. 2017) (holding ALJ's findings at step four cured lack of elaboration at step three); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (holding that the ALJ need not discuss every piece of evidence and not citing evidence does not indicate the ALJ did not consider it). But "inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand" if they might change the outcome of the determination; an ALJ, not a reviewing court, must resolve those issues. *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005). *See also Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822–23 (8th Cir. 2008) (reversing when the ALJ's factual findings were insufficient for the court to conclude whether substantial evidence supported the determination); *David S. v. Saul*, No. 19-CV-3137 (ADM/LIB), 2021 WL 467348, at *3 (D. Minn. Jan. 25, 2021), report and recommendation adopted, 2021 WL 465281 (D. Minn. Feb. 9, 2021) ("a reviewing court cannot search the record to find other grounds to

support the decision of the ALJ" when the decision does not provide that support) (cleaned up).

### III. DISCUSSION

Plaintiff argues that his past job should have been classified as a composite of duties from both Buyer and Merchandise Displayer, and the job should be classified based on the highest level of exertion required, in this case medium. (Pl's Mem. at 13–15.) The Commissioner argues the job was not composite because it lacked "significant" elements of two different job descriptions in the DOT. (Def's Mem. at 7–8.) Plaintiff replies that the vocational expert and the ALJ did not analyze whether Plaintiff's travelling and setup and teardown duties were "significant" in the context of a potential composite job, but instead found that Buyer was the appropriate classification based purely on the job title Plaintiff gave in testimony and that Plaintiff did not perform all the duties of a Merchandise Displayer. (Pl's Reply at 2–4 [ECF No. 25].) He next argues that he could not perform medium exertional work with his RFC, so the ALJ should have moved on to step five, at which point Medical-Vocational Rule 202.02 would have directed a finding of disabled. (Pl's Mem. at 15–16.)

"Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). An ALJ may use a vocational expert to offer evidence about the physical and mental requirements of a claimant's past relevant work and about whether a hypothetical person with the claimant's RFC could perform that work, either as the claimant actually performed it or as generally performed in the national economy. *Id.*

(b)(2). An ALJ will classify a job based on occupational descriptions given in the DOT. *Id.*; *Titles II & XVI: Past Relevant Work-the Particular Job or the Occupation As Generally Performed*, SSR 82-61, 1982 WL 31387 at *1–2 (S.S.A. 1982).

But "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." SSR 82-61, 1982 WL 31387 at *2 (S.S.A. 1982); *Sloan v. Saul*, 933 F.3d 946, 950 (8th Cir. 2019); *Past Relevant Work (PRW) as the Claimant Performed It*, SSA Program Operations Manual (POMS) DI 25005.020. "A composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'" POMS DI 25005.020. If past relevant work was a composite job, the ALJ should "find the claimant capable of performing the composite job only if he or she can perform all parts of the job." *Id.* Failure to do so "constitutes an error of law and grounds for remand." *Blackwell v. Colvin*, No. 4:14 CV 252 JMB, 2015 WL 4132000, at *17 (E.D. Mo. July 8, 2015) (reversible error when an ALJ failed to recognize that past relevant work was composite and made up of jobs at two different exertional levels); *McAbee v. Colvin*, No. 15-5097, 2016 WL 3983734, at *2–3 (W.D. Ark. July 25, 2016) (ALJ did not even mention the work "composite" in his past relevant work discussion).

A job may not have been composite just because it entailed responsibilities beyond those outlined in the DOT definition of a single occupation. *Sloan*, 933 F. 3d at 950. A job "may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national

13

economy," but the claimant is not disabled if he can perform the demands and duties as generally required. SSR 82-61, 1982 WL 31387 at *2 (S.S.A. 1982).

In *Sloan*, the Eighth Circuit Court of Appeals considered whether substantial evidence supported the ALJ's determination that the claimant's past relevant work was not a composite job. 933 F. 3d at 950. The court highlighted that the claimant's testimony about her primary job responsibilities included:

> 'going through notes' and managing 'incoming calls from members and routing them' to the appropriate person. . . . She also had to lift no more than ten pounds on a daily basis, and needed to walk for only one hour per day. . . . That she also walked the merchandise floor once a week and 'sometimes' needed to retrieve items on the floor to solve customer issues does not diminish her work as a receptionist.

*Id.* The Court found that based on this description, the claimant's additional responsibilities "were not the focus of her job," and she performed all the duties of a receptionist. *Id.* Therefore, substantial evidence supported the ALJ classifying the claimant's past relevant work as a receptionist. *Id.*

The district court in *McAbee* considered a similar question. 2016 WL 3983734, at *2–3 (W.D. Ark. July 25, 2016). The court highlighted that the claimant's testimony about his past job included differing responsibilities as a goods stacker, a forklift operator, and a manifest clerk. *Id.* at *3. The court found that the claimant's testimony established that his past work involved duties of two distinct occupations in the DOT, but the ALJ only considered claimant's ability to do the manifest clerk job in the hypothetical to the vocational expert. *Id.* The court held the ALJ was required by law to consider the past work as a composite job, and remanded. *Id.*

14

The two occupations at issue here are clearly distinct based on the DOT definitions. A Merchandise Displayer

> [d]isplays merchandise, such as clothes, accessories, and furniture, in windows, showcases, and on sales floor of retail store to attract attention of prospective customers: Originates display ideas or follows suggestions or schedule of MANAGER, DISPLAY (retail trade) and constructs or assembles prefabricated display properties from wood, fabric, glass, paper, and plastic, using handtools. Arranges properties, mannequins, furniture, merchandise, and backdrop according to prearranged plan or own ideas. Places price and descriptive signs on backdrop, fixtures, merchandise, or floor. May dress mannequins for use in displays.

*Dictionary of Occupational Titles*, 298.081-010 (4th rev. ed. 1991). The occupation is medium exertional level, *id.*, meaning to do the full range of duties a person must be "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." *Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251 at *6 (S.S.A. 1983).

A Buyer

> [p]urchases merchandise or commodities for resale: Inspects and grades or appraises agricultural commodities, durable goods, apparel, furniture, livestock, or other merchandise offered for sale to determine value and yield. Selects and orders merchandise from showings by manufacturing representatives, growers, or other sellers, or purchases merchandise on open market for cash, basing selection on nature of clientele, or

15

> demand for specific commodity, merchandise, or other property, utilizing knowledge of various articles of commerce and experience as buyer. Transports purchases or contacts carriers to arrange transportation of purchases. Authorizes payment of invoices or return of merchandise. May negotiate contracts for severance of agricultural or forestry products from land. May conduct staff meetings with sales personnel to introduce new merchandise. May price items for resale. May be required to be licensed by state. May be identified according to type of commodities, merchandise, or goods purchased.

*Dictionary of Occupational Titles*, 162.157-018 (4th rev. ed. 1991). The occupation is light exertional level, *id.*, meaning to do the full range of duties a person must be "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). As with medium work, a full range of light work requires the ability to stand 6 hours in an 8-hour day to accomplish the lifting and carrying requirements. SSR 83-10, 1983 WL 31251 at *6 (S.S.A. 1983).

Plaintiff testified that for 15 days a month, he appraised and purchased goods paid for with checks, packaged those goods, and arranged their shipment with Fedex. He testified that the boxes weighed between 20 and 55 pounds and large individual purchased items weighed 15 pounds or more. That matches many aspects of a Buyer, including purchasing merchandise for resale on open market for cash, utilizing knowledge of various articles of commerce and experience as buyer, and transporting purchases and contacting carriers to arrange transportation of purchases. *Dictionary of Occupational Titles*, 162.157-018 (4th rev. ed. 1991). As the ALJ and vocational expert acknowledged, the weight of the goods exceeded Plaintiff's RFC, so he could not do the job as he performed it. In addition, the Court concludes that substantial evidence in the

record as a whole supports the ALJ's finding that Plaintiff could perform the role of Buyer as described by the DOT, based on Plaintiff's RFC.

But the question remains whether Plaintiff's job was actually a composite. Plaintiff testified that he spent 6 days a month traveling and 12 days a month lifting, setting up, and tearing down the equipment, luggage, and booth materials needed to buy the goods, and some of the equipment and luggage weighed up to 100 pounds. Plaintiff argues that this testimony pushed the job out of purely Buyer and into a composite with Merchandise Displayer. Neither occupation explicitly contemplates Plaintiff's regular travel, so the travel is better understood as a duty "in excess of those generally required for" either occupation, SSR 82-61, 1982 WL 31387 at *2 (S.S.A. 1982), not as a significant element of Merchandise Displayer. Further, Plaintiff's setup and teardown duties, while superficially similar to the Merchandise Displayer's display fabrication and construction duties, do not qualify as a significant element of that occupation, regardless of the amount of time Plaintiff spent on the tasks. A Merchandise Displayer designs, fabricates, and/or sets up displays of merchandise for sale, seeking the ultimate goal of attracting customers to buy those goods. *See Dictionary of Occupational Titles*, 298.081-010 (4th rev. ed. 1991). Plaintiff did not set up displays of merchandise for sale, but instead a booth and associated equipment from which he could purchase goods from others; he did not display any merchandise, nor did he sell anything. Though Plaintiff constructed a booth, the details of what he was building and the purposes it served show that duty was not a significant element of the Merchandise Displayer occupation. This duty is better categorized as one "in excess of" the standard duties required of a Buyer.

Therefore, the ALJ did not err in failing to consider a composite job, and the ALJ finding that Plaintiff's work was as a Buyer is supported by substantial evidence.

## IV. CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Plaintiff's Motion for Summary Judgment [ECF No. 18] is **DENIED**; and

2. Defendant's Motion for Summary Judgment [ECF No. 21] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 21, 2022

*s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge